# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SALLY M. JANDERESKI,                    Case Number: 10-11677
        Plaintiff,

                                       HON. ROBERT H. CLELAND
v.                                          UNITED STATES DISTRICT JUDGE

COMMISSIONER OF SOCIAL           HON. VIRGINIA M. MORGAN
SECURITY,                                UNITED STATES MAGISTRATE JUDGE
        Defendants.

_____ /

## REPORT AND RECOMMENDATION

**I.  Introduction**

      This is an action for judicial review of defendant's decision denying plaintiff's applications for social security disability benefits and for supplemental security income (SSI). The matter comes before the court on cross motions for summary judgment.   Plaintiff contends that the decision is not supported by substantial evidence because the hypothetical propounded to the vocational expert was flawed.  For the reasons discussed in this report, the court finds that the ALJ's hypothetical question to the vocational expert adequately accounted for plaintiff's limitations and the ALJ's reliance on the VE's opinion was appropriate.  Thus, it is recommended that the defendant's motion for summary judgment be granted, that of plaintiff denied, and the decision denying benefits be affirmed.

**II. Standard of Review**

     A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The claimant bears the burden of proving that he is disabled. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In *Foster*, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

On judicial review, a court must determine whether the agency's decision is supported

by substantial evidence. *Gillespie v. Commissioner*, 2010 WL 4063713, *3 (ED MI) (Lawson, J.)(collecting cases). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), see also *Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983). If so, the agency's decision is to be affirmed.

If the decision is not supported by substantial evidence, then Sentence Four of 42 U.S.C. § 405(g) provides that a district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [now Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A Sentence Four remand provides the required relief in cases where there is insufficient evidence on the record to support the Commissioner's conclusions and further fact-finding is necessary. *See, Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citation omitted). In a Sentence Four remand, the court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. Also under Sentence Four, an agency's decision may be reversed and benefits immediately awarded if the record adequately establishes a plaintiff's entitlement to benefits. *Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994). Where an adequate record exists, the decision denying benefits can be reversed and benefits immediately awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *See Faucher*, 17 F.3d at 176. Where remand would be an idle and

useless exercise, courts are not required to convert judicial review of agency action into a ping-pong game. *Wilson v. Commissioner*, 378 F3d 541, 547 (6th Cir 2004) (citing *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6(1969)(plurality opinion)).

### III. Background

A. *The ALJ Decision*: Plaintiff alleges that she became disabled February 2, 1999 due to panic attacks and agoraphobia. (Tr. 21) Plaintiff is insured for Title II disability benefits only through March 31, 2002. Plaintiff had two ALJ hearings: (1) before ALJ Harper in 2005 [who found her able to perform her past relevant work, Tr. 331] and (2) after remand from the Appeals Council before ALJ Thomas McGovern in November, 2007. This latter decision (Tr. 19-29) became the final decision of the agency and it is from that which she appeals. ALJ McGovern considered the testimony of plaintiff and a vocational expert and found that plaintiff had the severe impairments of seizure disorder, low back pain, alcohol dependence, depressive disorder, and anxiety disorder. (Tr. 22) None of her impairments singly or in combination met the Listings of Impairments. Id.

The ALJ found that plaintiff had mild restriction in activities of daily living and moderate difficulties in social functioning. (Tr. 22) The ALJ also found that plaintiff had moderate difficulties with regard to maintaining concentration, persistence or pace. (Tr. 23)

The ALJ considered the evidence of medical and mental impairments and the testimony of the vocational expert and found that plaintiff could not perform her past relevant work but retained the residual functional capacity to perform a limited range of sedentary work which existed in significant numbers and so was not disabled. Specifically, the ALJ found that plaintiff had the residual functional capacity to lift ten pounds both regularly and

occasionally, perform work with a sit/stand option after two hours of sitting and half an hour of standing; climb, crawl, bend, kneel, and crouch occasionally; no exposure to unprotected heights or machine operation; perform simple, unskilled work with moderate limitations in concentration, minimal contact with general public, and limited contact with co-workers. (Tr. 23) Consistent with the testimony of the vocational expert, the ALJ determined that plaintiff could perform assembly work, some inspecting and checking jobs, some packaging work, and simple machine tending work and that there were about 6,000 total positions existing in southeastern Michigan. (Tr. 29, 555)

At the time of the decision, plaintiff was 47 years old with a GED certificate and past relevant work as a housekeeping cleaner, cashier-checker, pizza baker, waitress, and production assembler.

B. *Testimony at the Hearing:* Plaintiff was represented at the hearing by her counsel here, Michael Lupisella. Plaintiff testified at the 2005 hearing that she lives with her mother. Plaintiff quit school in the tenth grade but completed her GED. (Tr. 510-11) Plaintiff last worked in 1999 as a waitress. She stopped because she started having panic attacks. She has not applied for work anywhere since that time. Her most serious problems are her panic attacks and low back pain. (Tr. 512) She rarely drives or goes out of her house. She goes to the grocery store and to visit friends or they visit her. Her panic attacks became quite bad in 2000 and she was drinking heavily to cover the fact but it did not help. (Tr. 513) At the time of hearing, she had stopped drinking altogether. (Tr. 514) She had sessions with a psychologist but there is no discussion of panic attacks in the medical records. (Tr. 515) Plaintiff also has a diagnosis of osteoporosis for which she takes over the counter Tylenol.

(Tr. 522) The vocational expert opined that if plaintiff could perform light work, she could perform all of her past jobs. (Tr. 525) If she had panic attacks, unable to perform even a low stress job with simple one or two step instructions, then she could not work. (Tr. 526) Plaintiff sought review from the Appeals Council which determined that further consideration should be given to plaintiff's mental impairments. (Tr. 340)

In September, 2007, plaintiff had a second hearing on remand from the Appeals Council, again with her attorney Mr. Lupisella. (Tr. 530)  Plaintiff's attorney stated that he was still waiting for medical source statements from her treating physician Dr. Hall at Huron Medical Center. (Tr. 532)  Plaintiff testified that she was 46 years old, lives with and cares for her 79 year old mother. (Tr. 534)  Plaintiff has her GED and attended the Detroit College of Business in 1988 or 1990.  She has back pain which is a dull ache and she has problems lifting anything heavy. (Tr. 537)  Plaintiff has previously been diagnosed with seizure disorders but has not had a seizure for several years.  She takes Dilantin to control the condition and is also on sinus medication. (Tr. 539)  Plaintiff states that she is still having panic attacks about three times a day.  Id.   Plaintiff and her mother occasionally shop together when plaintiff feels well. (Tr. 540) She takes Xanax and Prozac to control the panic and depression. (Tr. 541)  Plaintiff does the cooking and cleaning and can climb stairs.  She reads a lot and it helps her to focus.  She enjoys romance, mystery, and other fiction.  She finishes a book in two or three days.  In addition, she works crossword puzzles, plays card games including solitaire and rummy.  She does not drive. (Tr. 539-547)

With respect to alcohol, plaintiff stated that she does not use alcohol.  This was clarified to mean that she has not had a drink in a couple of months.  She took a class similar

to AA for about a year. She is trying to avoid alcohol by not going to bars. She denied that alcohol had been a problem for her. (Tr. 550)

Plaintiff also testified that she deals with stress by talking with her mother. She has a friend who takes her to the doctor, she visits with friends and other family once a week and plays cards with them. She stated that she is scared to go out in public and on bad days she is homebound and does not want to talk to anyone. She testified that her mind races some times and she has difficulty concentrating. (Tr. 550-553)

Luann Castellana testified as a vocational expert. (Tr. 553-559) Ms. Castellana identified plaintiff's past work as unskilled to semi-skilled and light to medium. (Tr. 554) The ALJ asked her a series of hypothetical questions as follows:

> Q: Assuming a hypothetical individual the same age as claimant with the same education and work experience, limited to the ability to lift ten pounds regularly, twenty pounds occasionally, to sit for two hours at a time and one half hour with a sit/stand option, occasional postural activities, that is climbing, crawling, bending, kneeling, stooping, or squatting; and limited to simple unskilled work activities with moderate–you understand moderate as it's used by the agency in defining limitations, yes?
>
> A. Yes I do.
>
> Q: Okay, moderate limitations in the ability to maintain concentration; requiring limited contact, minimal contact with the general public and limited contact with co-employees. With those limitation would that individual be able to perform any of the past work performed by the claimant?
>
> A: No. The majority of the jobs involved working with the public.
>
> Q: Would this individual be able to perform other work activities?
>
> A: There are some unskilled jobs that would allow for sit/stand option at the light–at the light, unskilled range in southeast Michigan some examples would be assembly work, about 2000; some inspecting and

        checking jobs, about 1000; some packaging about 1500; simple machine tending about 1500.

(Tr. 555)

  Q: Okay. Assuming that individual in addition to the limitation in hypothetical number 1 would also be limited in the ability to work at unprotected heights and machine operation. Would that change the results you've indicated?

  A: Well it would rule out the machine tending wok. But all the other jobs would still be (inaudible).

  Q: Assuming that hypothetical individual was limited to a more at the sedentary level, that is lifting ten pounds regularly, ten pounds occasionally, would that–would there be jobs at that level as well?

  A: Yes. There would be inspecting and checking jobs, about 1000; some assembly, about 2000; packaging about 1000.

  Q: Are these the same jobs?

  A: No these were–these are sedentary sit/stand option.

  Q. Okay.

  A: But there would be less, less weight involved and would allow for more sitting.

  Q: And is that packing, assembly and inspecting?

  A: Yes.

  Q: Okay. Assuming that hypothetical individual in the foregoing hypothetical, in addition to the limitations indicated in each would likely be miss two or more–have two or more absences a month as a result of symptoms from panic attacks. Would that impact the jobs?

  A. Yes, Your Honor. More than two absences a month would not be tolerated and it would rule out these jobs and other jobs.

(Tr. 556)

   The vocational expert was then questioned by Mr. Lupisella.

  Q: Ms. Castellana, the –as far as with the moderate limitation and concentration is concerned, your understanding of that is, is what?

8

|  |  |
|---|---|
| A: | That individual could still perform unskilled or simple, unskilled work. |
| Q: | Okay. So it's not–there some limitations, but it's not totally preclusive? |
| A: | Correct. |
| Q: | Okay. If, if we kind of supplement that with saying that 20 percent of the time or essentially one day per work, an individual's concentration if limited such that it results in the in completion of tasks, would that preclude work? |
| A: | Is that one day a week or it is 20 percent? |
| ATTY: | Twenty percent or equivalent of one day a week if you take into consideration five days. |
| ALJ: | I guess I'm, I'm having a hard time. Are you saying twenty percent of the work day they wouldn't be able to concentrate? |
| ATTY: | or they –yeah right. Their concentration is so deficient that it results in, in not being able to complete the tasks that they're assigned to do. So they're unproductive 20 percent of the work time. |
| ALJ: | Okay. It wouldn't be necessarily one day? |
| ATTY: | Right. Just 20 — |
| ALJ: | Because otherwise they wouldn't–if they were off the whole day, it would be like they didn't show up. |
| VE: | Yeah it would be like an absence from work, but twenty– |
| ALJ: | So it's 20 percent of the time they would not be able to focus on the task at hand? |
| ATTY: | Yes, sir. |
| ALJ: | Okay. Thank you. I just wanted to make that clear. |
| ATTY: | No problem. |
| ALJ: | Can you answer that one? |

(Tr. 557)

9

| | | |
|---|---|---|
| VE: | | Well, I believe 20 per cent of an eight hour work day would still be like an unscheduled break or they're off task and they're not actually completing tasks that they're required. So that would have a significant impact on their ability to perform work. |
| ATTY: | | Work preclusive then? |
| VE: | | Yes. |
| ALJ: | | It's what? I'm sorry. |
| VE: | | Work preclusive. |
| ALJ: | | 20 percent of the – |
| VE: | | Yes. |

(Tr. 558)

C. *Medical and Mental Health Evidence:*   As noted by the ALJ, plaintiff's medical records do not discuss her panic attacks in detail. In 2000, plaintiff was seen at the Emergency Room where anxiety was noted upon her visit. She was seen for alcoholism, depression, and peptic ulcer disease and reported drinking 18 beers a day. The final diagnosis was withdrawal from alcohol. (Tr. 114)   Plaintiff was seen frequently by Dr. Hall who notes "having panic attacks" in March, 2000. Also noted were sinus infection, and a mole to be removed. (Tr. 126)   Dr. Hall notes some urinary tract infection, possible diabetes, and postnasal drip in April, 2000. She was on Paxil but that note did not mention of panic attacks. (Tr. 124)

In 2001, she was admitted to St. Mary's Hospital in Saginaw for chest pain. Stress testing and electrolytes ruled out angina or other cardiac source. She reported a history of panic attacks. (Tr. 129-131) In September, 2001, plaintiff was seen at Huron Memorial Hospital following renewal of her Dilantin obtained via the ER the day before. She reported a

history of panic disorder but it was not mentioned as a current condition. Plaintiff reported not feeling well. She lives with her mother and drinks four to twelve cans of beer a day. She denied cocaine or heroin use but did take some street drugs a long time ago. (Tr. 150) She was referred to Dr. Collinge, M.D. whom she saw in December 2002. Plaintiff did not continue treating with him and said she was going to follow up with Dr. Hall. (Tr. 156)

Plaintiff was examined for disability in March, 2003 by Dr. Scott Lazzara, M.D. The conclusion was chronic back pain most likely related to mild to moderate osteoporosis. There was no evidence of radiculopathy and she maintained a normal gait. With respect to the seizure history, there were no focal neurological deficits in examination. She had not had seizures for two years and was on Dilantin therapy[1]. Plaintiff reported a history of panic attacks and a psychiatric evaluation was recommended. (Tr. 181)

The physical residual functional capacity assessment of March, 2003 limited her to light work, no ramps or scaffolds, avoid power machinery, vibration, and air tools, and she should not drive. (Tr. 181-190) The psychiatric review technique completed by Ronald Marshall, Ph.D., indicated that she had anxiety related disorder (panic attack) which produced mild limitations of daily living, and mild limitations re maintaining concentration, persistence, and pace and moderate difficulties in social functioning. (Tr. 202-208) She was moderately limited in the ability to carry out detailed instructions and maintain attention and concentration for extended periods. (Tr. 206) Plaintiff would do better with minimal public contact jobs but retained the ability to do unskilled work. (Tr. 204)

---

[1]Elsewhere in the medical records, it is noted that the seizures are related to alcohol withdrawal though she has been maintained on Dilantin. (E.g. Tr. 246)

In June, 2004, notes from Dr. Hall indicate that plaintiff violated her probation and would be returning to jail. (Tr. 284)  In September, 2004, medical records indicate that plaintiff "had seizure at work yesterday.  Hurt arm.  Er told her to see [doctor]." (Tr. 274-5) Medical records show frequent treatment for sinus infections, cystitis and anxiety with continuation of the Xanax and Celexa.  There is essentially no reference to treatment for panic attacks during 2003 through 2004.

However, in March, 2005, Dr. Hall wrote a two sentence letter to plaintiff's attorney Mr. Lupisella: "Sally Jandereski has been diagnosed as having panic attacks and anxiety.  She has been treated for this." (Tr. 319)

In May, 2007, plaintiff was examined for disability by Dr. Wladimir Zarski, M.D., with her chief complaint Anxiety Disorder for the last 7 or 8 years. She stated that she had anxiety almost every day.  She takes Dilantin, Ultram, Xanax, Toprol, Prilosec, and Prozac.  She has drunk alcohol and smoked marijuana since she was 15 and stated that she had several blackouts, but denied withdrawal symptoms.  She had her last drink two days before the examination, but she stated she has not smoked marijuana since she was 19. (Tr. 362)   She denied any psychiatric hospitalizations.  Dr. Zarski assessed plaintiff as having a GAF of 60, consistent with moderate limitations in this area of functioning.  She has never experienced episodes of decompensation.  (Tr. 364)  The medical source statement of mental ability indicates that she has moderate limitation in the ability to remember, understand, and carry out complex instructions, and to make judgments on complex work-related decisions. (Tr. 365)   Interactions with supervisors, co-workers, and responding to changes in the work setting was moderately limited.  Her alcohol dependence interfered with her coping skills,

which should improve with less substance abuse. (Tr. 366)

Dr. Hall's notes reflect continuing treatment for sinusitis, bronchitis and depression in 2005 through 2007, but without reference to panic attacks, except for the letter to the lawyer and one mention four days before the letter is dated. (E.g. Tr. 382, 383, 385) It notes that the Paxil was giving her nightmares. (Tr. 396)  She was noted to be doing fairly well in March, 2007. (Tr. 413)  In August, 2007, Dr. Hall filled out a form that indicated that about plaintiff was limited by seizure disorder and low back pain to lifting no more than 20 pounds, stand and walk 6 of 8 hours, sit continuously 6 hours, and 40 of 160 hours her limitations would disrupt her schedule. (Tr. 417) No supporting documentation, observation, or testing is provided. No limitations based on panic attacks are noted.

In November, 2007, Dr. Anwar indicates that he saw her for cardiac consultation. Plaintiff has atypical chest pain. She should quit smoking and stop drinking, which she continues to do in excess. (Tr. 428)

### IV. Discussion

Plaintiff alleges that the hypothetical to the vocational expert failed to include the moderate deficiencies in maintaining attention, concentration, persistence, and pace that had been established in the record. (Brief 8)  The court disagrees. If the ALJ relies on a vocational expert's testimony in response to a hypothetical to conclude that the claimant is capable to performing a number of jobs, the hypothetical must describe the claimant in all significant and relevant aspects. *Felisky v. Bowen*, 35 F3d 1027, 1035-36 (6th Cir 1994). However, the ALJ is not required to include in the hypothetical limitations not supported in the record. *Infantado v. Astrue*, 263 Fed. Appx. 469, 476-477 (6th Cir. 2008). *See also, Payne*

*v. Commissioner*, 2010 WL 4810212, *2-3 (6th Cir, 2010)

The ALJ evaluated the evidence consistent with applicable administrative rulings and regulations, (Tr. 23) and took into account plaintiff's need to reduce interaction with the public, coworkers and supervisors. Plaintiff has on going alcohol abuse. Despite that, her psychomotor activity is normal; she is reported as cooperative and pleasant. She can recite six digits forward and backward, recall three of three objects after five minutes, and perform simple calculations correctly. These clinical findings, as noted by the ALJ, are consistent with an ability to perform simple, unskilled work. While plaintiff has moderate limitations in the areas of concentration, persistence and pace, she can read and finish a book in two or three days. She can do laundry, cook, clean, and play cards. These are inconsistent with a physical or mental inability to work. Plaintiff has never had inpatient psychiatric hospitalization, episodes of decompensation, and has had successful treatment with medication. Although plaintiff testified in 2007 that she has panic attacks three times a day, this is not documented in the medical records. No physician has ever opined that she is disabled due to panic attacks. Her treating physician Dr. Hall mentions seizure disorder and back pain and opines that she would be limited by 25% in her ability to work. However, no documentation supports that determination. Likewise, plaintiff's counsel's questioning of the vocational expert regarding a purported 20% reduction in ability to concentrate is irrelevant because such factual assumption is without support in the evidentiary record.

The ALJ provided a full and fair analysis of his reasons for rejecting Dr. Hall's opinion and this court agrees that the opinion is not entitled to great weight because it does not meet the standard in this circuit. *Payne v. Commissioner*, 2010 WL 4810212, *2-3 (6th

Cir, 2010), See also, *Harris v. Heckler*, 756 F2d 431, 435 (6th Cir. 1985), *Young v. Secretary of HHS* 925 F2d 146, 151 (6th Cir 1994).

As noted by several courts, there is nothing talismanic about the term "moderate" difficulties. In *Adams v. Commissioner of Social Sec.* 2011 WL 63495, 2(E.D.Mich.,2011), Judge Murphy was presented with a similar argument. He found that plaintiff's claim was really directed at the ALJ's conclusions of fact in regard to her condition. The medical and psychiatric examiners and reviewers found that plaintiff could handle most activities of daily living, and that she could perform a range of simple tasks and could do work which limited her interactions with supervisors, coworkers, and the public. That evaluation was supported by substantial record evidence, and it is therefore an inappropriate subject for review by a district court. *Longworth v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.2005). As Judge Murphy noted, on the surface, plaintiff's "legal" argument is the failure to "accurately" include the "moderate" limitation in the ability to concentrate for prolonged periods in the hypothetical to the vocational expert. Adams, like the plaintiff here, had a moderate limitation in "concentration, persistence, and pace." "The ALJ's hypothetical, based on his weighing of this evaluation alongside other evidence other evidence, asked the VE to identify potential jobs that he believed were appropriate for someone with Adams' condition, including appropriate limitations designed to address concentration lapses." *Adams*, 2011 WL 63495, 2. Here, the ALJ considered the evidence and developed a complete and accurate assessment of the mental impairment and possible work opportunities. The vocational expert's reliance on that description and opinion resulting therefrom is substantial evidence supporting a denial of benefits. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001).

The ALJ took into account the limitations documented in the medical evidence and limited plaintiff to minimal contacts with the public, simple unskilled sedentary work. Plaintiff's discussion about twenty percent limitation and one day a week of unproductive activity is not supported in the record. The form report of her treating physician Dr. Hall, which could be read to infer a 25% loss of time due to interference from impairments, is totally unsupported by any objective evidence. The ALJ is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability. *Maple v. Commissioner*, 14 Fed. Apx. 525, 536 (6th Cir. 2001) and need only accord great weight to those opinions supported by acceptable clinical and laboratory diagnostic techniques. *Walters v. Commissioner*, 127 F3d 525, 529-530 (6th Cir. 1997). Dr. Hall's opinion is not one of those.

**V. Conclusion**

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: March 25, 2011

## PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on March 25, 2011.

    s/Jane Johnson
    Case Manager to
    Magistrate Judge Virginia M. Morgan